IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDIE RAY GRAY, | ) | |
| Petitioner, | ) | Civil Action No. 17-71 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Richard A. Lanzillo |
| ERIC TICE, et al., | ) | |
| Respondents. | ) | |

## OPINION

Before the Court[1] is a petition for a writ of habeas corpus filed by state prisoner Eddie

Ray Gray ("Gray") pursuant to 28 U.S.C. § 2254. ECF No. 7. He is challenging the judgment of

sentence imposed upon him on September 7, 2012, by the Court of Common Pleas of Warren

County at its criminal docket number CP-62-CR-264-2012. For the following reasons, the Court

will grant his petition and issue a conditional writ of habeas corpus.

## I.    Introduction[2]

In 2007, Jeremy C. Hoden ("Hoden") committed numerous crimes against Merle Rice

("Merle") and his elderly mother, Irene Rice ("Irene") (collectively, the "Rices"). The

Commonwealth filed charges against Hoden in the Court of Common Pleas of Warren County

and he subsequently pleaded guilty to counts of burglary, robbery, criminal trespass, and related

crimes and was sentenced to a term of imprisonment.

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a
United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]    Respondents produced most of the relevant state court record at ECF No. 17-1 in the appendix to their
answer. At ECF No. 24, the Respondents filed the transcript of Gray's September 7, 2012, sentencing hearing and
the July 31, 2015, hearing held on his petition for collateral relief, which he filed with the Court of Common Pleas
pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). This Court shall cite to these electronically-filed
documents by their ECF document and page number. Respondents also submitted to this Court hardcopies of
documents filed with the Court of Common Pleas in Gray's underlying criminal case, including the transcript of his
August 2012 trial and the exhibits introduced at the trial. This Court shall cite to documents contained in that state
court record ("SCR") by their Bates stamp number as follows: "SCR at ___."

1

In early 2012, Hoden and Gray, who was serving time on an unrelated conviction, were incarcerated at the same state correctional institution. Over a two-month period beginning in January 2012, they each mailed threatening letters to participants in Hoden's 2007 criminal cases. Gray sent a total of three letters to the Rices, and one letter each to: the District Attorney of Warren County; the Assistant District Attorney who had been involved in the prosecution of Hoden's cases; and the two judges on the Court of Common Pleas who had presided over proceedings in those cases. In its decision affirming Gray's judgment of sentence on direct appeal, *Commonwealth v. Gray*, No. 1503 WDA 2013, slip op. (Pa. Super. Ct. July 9, 2013) ("*Gray I*"), ECF No. 17-1 at 68-96, the Superior Court of Pennsylvania provided lengthy quotations from the letters Gray sent to his victims. It accurately described the letters as "extremely threatening and highly disturbing," ECF No. 17-1 at 70, and explained:

> the letters in question threatened the "lives of not only the people [who] were receiving the letters, but also [their] families. And, [went into] great detail on how [Gray and Hoden] were going to do the things that they were going to do to each of the victims." N.T. Trial, 8/28/12, at 45-46. While both Gray and Hoden were in jail when they mailed the letters, those documents indicated that the victims would be killed either when Gray was released from prison or that the co-defendants had the ability to obtain help from outside sources in carrying out their threats.

ECF No. 17-1 at 71 (bracketed text added by the Superior Court).

The Commonwealth arrested Gray and Hoden and charged them with multiple counts of Retaliation Against a Witness or Victim, 18 PA. CONS. STAT. § 4953 ("§ 4953 Retaliation"), and Retaliation Against a Prosecutor or Judicial Official, 18 PA. CONS. STAT. § 4953.1 ("§ 4953.1 Retaliation"). Each Retaliation count was based on a single letter. The Commonwealth also charged them with multiple counts of Terroristic Threats, 18 PA. CONS. STAT. § 2706, and one count of Conspiracy, 18 PA. CONS. STAT. § 903.

Gray and Hoden's joint trial was held in August 2012, and at its conclusion the jury convicted each of them of committing numerous crimes.[3] It found Gray guilty on three counts of § 4953 Retaliation (Counts 5 through 7) (a count for each letter he sent to one of the Rices); four counts of § 4953.1 Retaliation (Counts 1 through 4) (a count for each letter he sent to one of the judicial/prosecutorial victims); eight counts of Terroristic Threats; and one count of Conspiracy.

On September 7, 2012, the court sentenced Gray to a term of five to ten years on each count of § 4953.1 Retaliation, three to seven years on each count of § 4953 Retaliation, five to ten years on the count of Conspiracy, and a fine on each count of Terroristic Threats. The court ordered that all sentences of incarceration be served consecutively, resulting in a total aggregate sentence of 35-71 years of imprisonment. It also ordered that the sentence it imposed was to run consecutively to a term of incarceration already being served by Gray.

Gray, through his counsel, filed a direct appeal with the Superior Court in which he argued that the Commonwealth presented insufficient evidence to sustain his convictions. The Superior Court affirmed his judgments of sentence in *Gray I*, ECF No. 17-1 at 68-96, and the Supreme Court of Pennsylvania denied his petition for allowance of appeal. ECF No. 17-1 at 165.

Gray next filed a *pro se* petition for PCRA relief. The court appointed him new counsel, who filed an amended PCRA petition. In it, Gray raised a number of claims in which he contended that his trial counsel provided him with ineffective assistance in violation of his Sixth Amendment rights. In relevant part, he claimed that his trial counsel was ineffective for failing to object to: (1) the instruction given on § 4953 Retaliation on the grounds that it violated his right

---

[3]     Although Gray had confessed to the police that he wrote the letters signed by him, when he testified at the trial he denied authorship. During his testimony, Hoden stated that he (Hoden) wrote all of the letters. The jury did not credit the defendants' testimony on this point and Gray has since admitted that he wrote every letter bearing his name. ECF No. 8 at 10.

to due process; (2) the instruction given on § 4953.1 Retaliation on the grounds that it too violated his right to due process; (3) the trial court's decision to permit the threatening letters to be sent out with the jury during its deliberations on the grounds that it violated state law and his right to due process; and (4) the sentence imposed on the grounds that it was manifestly excessive. ECF No. 17-1 at 166-80.

Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

Under *Strickland*, it is Gray's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Harrington v. Richter*, 562 U.S. 86, 104 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689).

*Strickland* also requires that Gray demonstrate that he was prejudiced by his trial counsel's deficient performance. This places the burden on him to establish "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694.

> [Gray] "need not show that counsel's deficient performance 'more likely than not
> altered the outcome of the case'–rather, he must show only 'a probability sufficient
> to undermine confidence in the outcome.'" *Jacobs v. Horn*, 395 F.3d 92, 105 (3d
> Cir. 2005) (quoting *Strickland*, 466 U.S. at 693-94). On the other hand, it is not
> enough "to show that the errors had some conceivable effect on the outcome of
> the proceeding." [*Richter*, 562 U.S. at 104] (citing *Strickland*, 466 U.S. at 693).
> Counsel's errors must be "so serious as to deprive the defendant of a fair trial." *Id.*
> (citing *Strickland*, 466 U.S. at 687). The likelihood of a different result must be
> substantial, not just conceivable. *Id.*

*Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011).

Gray's ineffective-assistance-of-counsel claims are premised upon due process violations

that he argues occurred at his trial without objection from his trial counsel.[4] To be clear, Gray did

not raise in his PCRA proceeding (or in the federal habeas petition now before this Court) stand-

alone due process claims. Rather, his due process claims are components of his ineffective-

assistance-of-trial-counsel claims. Therefore, it is not enough for him to establish that his

underlying due process claim has merit. Rather, Gray must demonstrate both of *Strickland's*

prongs: (1) that counsel performed deficiently for failing to raise a due process objection to the

trial court; and (2) *that his counsel's error prejudiced the defense*. That is because "[a]s a rule…a

violation of the Sixth Amendment right to effective representation is not complete until the

---

[4]       Under Pennsylvania law, when a defendant failed to preserve a claim of trial court error, he cannot
challenge that alleged error in his subsequent direct appeal. *See, e.g.*, 27 PAUL M. COLTOFF, ET AL., STANDARD
PENNSYLVANIA PRACTICE § 135.330 (2d ed.), WestlawNext (database updated Nov. 2018) ("Thus, a defendant's
failure to challenge the jury charge before the jury retires to deliberate prevents appellate review."); Pa.R.Crim.P.
Rule 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific
objections are made thereto before the jury retires to deliberate."); *Commonwealth v. Boyer*, 891 A.2d 1265, 1267
(Pa. 2006). That is because, in contrast to federal law, Fed.R.Crim.P. 52(b), the plain error doctrine has been
abolished in Pennsylvania. *Commonwealth v. Clair*, 326 A.2d 272 (Pa. 1974). When a defendant is foreclosed from
raising a trial-court error on direct appeal, he can receive review of it by raising it as a component of (or the
"underlying claim" of) an ineffective-assistance-of-trial-counsel claim, which must be litigated in a PCRA
proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002); *Boyer*, 891 A.2d at 1267 ("In abolishing the plain
error doctrine in Pennsylvania, the Court determined that unpreserved claims, including ones such as those grounded
in federal due process, 'can more properly be remedied by a claim of ineffective assistance of counsel,' [*Clair*, 326
A.2d at 274], now relegated to the post-conviction review process. *See Grant*, [ ]813 A.2d at 738.").

defendant is prejudiced." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910-11 (2017) (internal

quotations and citations omitted). And because a petitioner cannot prevail on a Sixth Amendment

claim unless he establishes both prongs of the *Strickland* test, the Supreme Court permits courts

to address only the prejudice prong if it is more efficient to proceed in that manner. 466 U.S. at

697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed.") That is why in so

many instances a court will dispose of ineffective-assistance claims solely based upon a

determination that *Strickland's* prejudice prong has not been satisfied, and that approach is

entirely proper.

The PCRA court denied each of Gray's claims, ECF No. 17-1 at 204-12, and Gray,

through counsel, filed an appeal with the Superior Court. In that appeal, Gray raised the three

guilt-phase ineffective-assistance-of-trial-counsel claims set forth above. He did not raise the

sentencing-phase claim. ECF No. 17-1 at 216-53.

On September 22, 2016, the Superior Court affirmed the PCRA court's decision.

*Commonwealth v. Gray*, No. 1733 WDA 2015, slip op. (Pa. Super. Ct. Sept. 22, 2016) ("*Gray

II*"), ECF No. 17-1 at 294-306. It denied each of Gray's claims on the merits. He filed a petition

for allowance of appeal with the Supreme Court of Pennsylvania, which that court denied on

February 28, 2017. ECR No. 17-1 at 339.

Next, Gray filed with this Court his petition for a writ of habeas corpus, ECF No. 7, and

memorandum of law in support, ECF No. 8, in which he raised the three guilt-phase ineffective-

assistance-of-trial-counsel claims that the Superior Court denied in *Gray II*.[5] The Respondents

filed their answer, ECF No. 17, and Gray filed a reply, ECF No. 19.

## II.    Jurisdiction and Standard of Review

This court has jurisdiction under 28 U.S.C. § 2254, which is the federal habeas statute

applicable to state prisoners. It permits a federal court to grant a state prisoner the writ of habeas

corpus "on the ground that he or she is in custody in violation of the Constitution...of the United

States." 28 U.S.C. § 2254(a). It is Gray's burden to prove that he is entitled to the writ. *Id.*; *see,*

*e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are

other prerequisites that he must satisfy before he can receive habeas relief (most relevant here is

the burden imposed upon him by the standard of review set forth at 28 U.S.C. § 2254(d)(1)

(discussed below)), but, ultimately, Gray cannot receive federal habeas relief unless he

demonstrates that he is in custody in violation of the federal constitution.

In 1996, Congress made a number of significant amendments to the federal habeas

statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. AEDPA "modified a federal habeas court's

role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v.*

*Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It

reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state

---

[5]      In his petition, Gray also raised one sentencing-phase claim (that his trial counsel was ineffective for failing to object to the sentence imposed on the grounds that it was manifestly excessive). Because Gray did not raise this claim to the Superior Court in his PCRA appeal, he procedurally defaulted it for the purposes of federal habeas review. Gray acknowledges that the claim is procedurally defaulted, but argues that he can overcome the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). This Court does not need to resolve that issue because it has determined that Gray is entitled to habeas relief on one of his guilt-phase claims and, therefore, will issue a conditional writ instructing that the Commonwealth must either retry him or, in the alternative, have the Court of Common Pleas vacate his § 4953 Retaliation convictions and resentence him. Under either option, Gray's sentencing-phase claim is moot.

criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307,

332, n.5 (1979) (Stevens, J., concurring in judgment)).

AEDPA put into place a new standard of review applicable to habeas petitions filed by

state prisoners, and it is codified at 28 U.S.C. § 2254(d). It provides, in relevant part:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as determined
> > by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court

proceedings" when a state court made a decision that finally resolves the claim based on its

substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson

v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014). The parties agree that the Superior Court adjudicated

on the merits the three guilt-phase claims that Gray now brings before this Court and that, as a

result, AEDPA's standard of review at § 2254(d)(1) applies to this Court's review of each claim.

The Supreme Court's *Strickland* standard is the "clearly established Federal law, as

determined by the Supreme Court of the United States," in which to analyze each of Gray's

claims under § 2254(d)(1). Therefore, in evaluating each claim, this Court's first task is to ask

whether the Superior Court's adjudication of the claim at issue was "contrary to" *Strickland.*

*Williams*, 529 U.S. at 404-05 (§ 2254(d)(1)'s "contrary to" and "unreasonable application of"

clauses have independent meaning). In relevant part, a state court's decision is "contrary to"

*Strickland* if the state court "applie[d] a rule that contradicts the governing law set forth" by the

Supreme Court in *Strickland*. *Id*. at 405.[6]

If this Court concludes that the Superior Court's adjudication of the claim at issue was not

"contrary to" *Strickland*, then it next evaluates the adjudication under § 2254(d)(1)'s

"unreasonable application" clause. "A state court decision is an 'unreasonable application of

federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably

applies that principle to the facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of*

*Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy

his burden under this clause, Gray must do more than convince this Court that the Superior

Court's decision was incorrect. *Id*. He must show that it "'was *objectively* unreasonable.'" *Id*.

(quoting *Williams*, 529 U.S. at 409) (emphasis added by court of appeals). This means that Gray

must demonstrate that the Superior Court's adjudication "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Richter*, 562 U.S. at 103.

> It bears repeating that even a strong case for relief does not mean the state court's
> contrary conclusion was unreasonable. *See [Lockyer v. Andrade*, 538 U.S. 63, 75
> (2003)].
> If this standard is difficult to meet, that is because it was meant to be. As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on
> federal-court relitigation of claims already rejected in state proceedings. *Cf.*
> *Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)
> (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no further.

*Id*. at 102.

---

[6]     Another way a state-court adjudication can be "contrary to...clearly established Federal law[,]"
§ 2254(d)(1), is "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the
Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S.
at 406.

If this Court determines that Gray has established that the Superior Court's adjudication of the claim at issue was either "contrary to" or "an unreasonable application of" *Strickland*, it "must proceed to review the merits of the claim *de novo* to evaluate if a constitutional violation occurred." *Vickers*, 858 F.3d at 849 (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)). That is because "a federal court can only grant the Great Writ if it is 'firmly convinced that a federal constitutional right has been violated[.]'" *Id.* (citing *Williams*, 529 U.S. at 389, and *Horn v. Banks*, 536 U.S. 266, 272 (2001) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review…none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard")). As the United States Court of Appeals for the Third Circuit explained in *Vickers*, these steps "sometimes merge in cases in which the federal habeas court determines that the state court engaged in an 'unreasonable application' of clearly established Supreme Court precedent because it will be apparent from the explication of why the state court unreasonably applied that precedent that, under any reasonable application, a constitutional violation did occur." 858 F.3d at 849 n.8.

## III. Discussion

### A. Counsel's Failure to Object to the § 4953 Instruction

In his first claim for habeas relief, Gray contends that his trial attorney provided him with ineffective assistance for failing to object to the trial court's instruction on the offense of § 4953 Retaliation. That instruction, Gray asserts, deprived him of his due process right to have the Commonwealth prove every element of the offense beyond a reasonable doubt.[7]

---

[7]    The Fourteenth Amendment requires the government to prove beyond a reasonable doubt every element of the crime with which a defendant is charged. *In re Winship*, 397 U.S. 358, 364 (1970); *United States v. Gaudin*, 515 U.S. 506, 510, 522-23 (1995). As a result, due process is violated when a jury instruction relieves the government of

### (1)    Background

#### (a)    The offense of § 4953 Retaliation

The Pennsylvania Crimes Codes defines § 4953 Retaliation as follows:

> A person commits an offense if he harms another by any unlawful act or engages
> in a course of conduct or repeatedly commits acts which threaten another in
> retaliation for anything lawfully done in the capacity of witness, victim or a party
> in a civil matter.

18 PA. CONS. STAT. § 4953(a). The Pennsylvania courts have interpreted § 4953 to allow for a

conviction of Retaliation if the Commonwealth proves the defendant engaged in any one of the

following three scenarios for a retaliatory purpose. The first scenario is that "the defendant

harmed another by any unlawful act," the second scenario is that the defendant "engag[ed] in a

course of conduct which threatened another," and the third scenario is that "the defendant

repeatedly committed acts which threaten another." *Commonwealth v. Ostrosky*, 909 A.2d 1224,

1228 (Pa. 2006).[8]

As set forth in more detail below, at Gray's trial the court declined to instruct the jury on

the second and third scenarios. It instructed only on the first scenario, which is that part of the

statute criminalizing retaliation if the defendant "harms another by any unlawful act." In

---

that burden. *See, e.g.*, *Washington v. Sarausad*, 555 U.S. 179, 190-91 (2009). Supreme Court precedent explaining
the federal due process standard instructs that a reviewing court must first ask whether "there is some ambiguity,
inconsistency, or deficiency in the instruction, such…that there was a reasonable likelihood that the jury applied the
instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable
doubt." *Sarausad*, 555 U.S. at 190-91 (internal quotations and citations omitted). "In making this determination, the
jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as
a whole and the trial record." *Id.* at 191 (internal quotation and citation omitted). "[I]t is not enough that there is
some slight possibility that the jury misapplied the instruction. The pertinent question is whether the ailing
instruction by itself so infected the entire trial that the resulting conviction violates due process[.]" *Id.* (internal
quotation and citation omitted).

[8]      If the jury determines that the Commonwealth proved beyond a reasonable doubt any of the three scenarios,
it must next determine whether the defendant did so in retaliation for the witness or victim doing something such as,
for example, testifying at trial against the defendant or giving information to the police. 18 PA. CONS. STAT. § 4953.

*Ostrosky*,[9] the Supreme Court of Pennsylvania held that to satisfy the requirements of that

scenario, the Commonwealth must prove the following two separate elements (in addition to the

retaliation element): (1) that the defendant caused harm; and (2) that such harm resulted from an

unlawful act. 909 A.2d at 1231-32. Importantly, the element of harm cannot be established

merely by showing that an unlawful act was committed. *Id.* at 1232-33. That is, the

Commonwealth must prove that the victim suffered a specific and identifiable harm as a result of

the threat, not just that the victim suffered "feelings of concern and intimidation[,]" which "are

feelings that one would expect to accompany any threat that was made." *Id.* at 1233.[10]

### (b) Gray's trial

Gray sent two letters to Irene and one letter to Merle. The first letter he sent to Irene was

dated January 27, 2012, which is the same date that Hoden sent his first letter to her. During

Irene's direct examination, the prosecutor asked her how she felt after she read Hoden's letter.

She replied: "I kind of laughed at it, because I knew he was in prison for a long time, so I wasn't

too concerned. Although it did make me a little fearful." SCR at 610. Hoden wrote that Gray

would be getting out of prison soon and that he would be coming after her. Irene testified that

that threat made her "a little concerned. Not too much. I didn't think[ ] anything would really

happen." SCR at 634. On cross-examination, Gray's trial counsel asked Irene why she was "only

concerned a little bit about the letters[.]" SCR at 635. She replied: "I knew they were locked up,

---

[9]     As in Gray's case, only the first scenario of § 4953 Retaliation was applicable in *Ostrosky*. The victim in
*Ostrosky* was verbally threatened by the defendant during an incident at a high school football game, and at the
defendant's trial the victim and his wife "testified to feelings of concern and intimidation" due to the defendant's
threats. 909 A.2d at 1233.

[10]    To conclude otherwise, the Supreme Court of Pennsylvania explained, would be "just another way of
asserting that harm, *per se*, results from the commission of an unlawful act." *Ostrosky*, 909 A.2d at 1233. "[T]his is
not to say[,]" the court clarified, "that one could never show that harm...resulted from a single threat. Rather, as
noted, at issue here is whether, in all cases, a distinct showing in this regard is required. Again, we hold that it is."
*Id.* at 1232 n.9.

12

and I didn't think they could get out right away." SCR at 636. The following exchange then occurred:

Q. You laughed about a couple of the comments [in the letters]?

A. Yeah. Because they were so ridiculous.

Q. So, it's fair to say, that you weren't emotionally traumatized by the letters?

A. I was concerned. Yes. But, not to the, I don't scare easy.

Q. Right. So, for example, you didn't have to see a psychiatrist or a therapist or –

A. No.

*Id.*

When he testified, Merle described his mother's reaction this way: "[s]he was pretty shaken up. She was pretty concerned about, especially about the statements that they were getting out of prison relatively soon. And, she wasn't sure what to expect. She was very, her hands were shaking when she gave me the letters." SCR at 657.

Gray and Hoden each wrote Irene a second letter in February 2012. Irene did not read either letter. She gave them to Merle to forward to the police. Gray and Hoden each wrote Merle a letter that same month. Merle only read Gray's letter. SCR at 648. Merle did not discuss during his direct examination how he felt after he read Gray's letter. On cross-examination, he testified that he did not have to see a psychiatrist or therapist. SCR at 662.

After the defendants rested their cases, Gray's counsel moved for judgment of acquittal on all counts of § 4953 Retaliation. He argued that the Commonwealth did not present sufficient evidence that the Rices had suffered objective harm beyond having been subjected to the threat itself, as required by *Ostrosky*. The trial court rejected this argument, concluding that there was "a jury question as to whether or not there was harm." SCR at 852.

13

Gray's trial counsel also argued that Gray could not be found guilty of § 4953 Retaliation under the "course of conduct" or "repeatedly commits acts" provisions of the statute (that is, under the second or third scenarios). In support, counsel pointed out that "there was only one letter to Merle Rice[,] [a]nd one threatening letter cannot establish a course of conduct." SCR at 846. As for Irene, counsel argued that, although Gray had sent her two letters, "the Attorney General charged one count [of Retaliation] for each letter." *Id.* Therefore, counsel argued, "as charged, the statute is not met, because there cannot be a course of conduct with one letter." *Id.*

The trial court was persuaded by trial counsel's argument regarding the second and third scenarios because when it instructed the jury on the offense of § 4953 Retaliation, it only provided the jury with the option of finding Gray guilty under that statute's first scenario. Neither defense counsel nor the prosecutor appears to have understood the trial court's decision at that point in time, however, because they discussed the inapplicable scenarios in their subsequent closing arguments.

During his summation, Gray's trial counsel stated:

Now, the law required that somebody has to be harmed by an unlawful actor engaged in course of conduct or repeatedly commit acts threatening to commit in retaliation for acts done as a victim or witness. And, that standard hasn't been met here. You have heard what everybody testified about. You heard Irene Rice testify. That she wasn't really intimidated by the letters. She didn't feel harmed. In fact, she laughed at some parts of that. So, I would argue that there was no actual harm to Irene Rice. There was only a threat of harm, which I am not minimizing. But, that doesn't fit the statute here. And same for Merle Rice. Really wasn't any harm. He didn't testify about having to miss any work, see a psychiatrist, anything like that.
 Also, there is the issue of course of conduct or repeatedly committing acts. How the evidence is charged here, how the charges are, is that there is one letter for each charge. That doesn't constitute a course of conduct. That doesn't constitute a repeatedly committing acts. Those are one acts [sic]. One act each. So, that standard simply isn't met.

SCR at 931-32.

14

In response, the prosecutor in his closing argument reminded the jury that all of the witnesses testified that the letters made them feel "concerned[,]" SCR at 944, and he specifically referenced Merle's testimony that Irene was "shaking" and "worried" after she read the first set of letters. SCR at 945. But in his final comments to the jury on the topic, the prosecutor argued that "this was one big course of conduct." SCR at 946.

When the trial court gave its instructions on the offense of § 4953 Retaliation, it omitted both the "course of conduct" and "repeatedly commits act" provisions (scenarios two and three) and only instructed as to the statute's first scenario–the "harms another by any unlawful act" provision. It stated:

> In order to find the Defendant guilty of the crime of retaliation against a witness or victim, you must find each of the following two elements have been proven beyond a reasonable doubt.
>     First, that the Defendant harmed either Merle Rice or Irene Rice by an unlawful act. And, that could be a threat or abuse or death threats. You will have the letters. You will get to review whether there was an unlawful act.
>     Second, that the Defendant did so in retaliation for Merle or Irene testifying at a trial or giving information to a police officer or other judicial person, which was something lawfully done by that victim or witness in the capacity as a victim or witness.
>     A witness is a person having of the existence or non-existence of facts or information relating to a crime.
>     If you find those two elements have been proven beyond a reasonable doubt, you should find the Defendant guilty. Otherwise, you must find the Defendant not guilty.

SCR at 977-78.[11]

---

[11]    The offense of § 4953 Retaliation is a felony of the third degree if the retaliation is accomplished by any of the means specified for the offense of Intimidation of Witness or Victims, which is codified at 18 PA. CONS. STAT. § 4952. For example, it is a third-degree felony for a person to retaliate against a witness or victim if the defendant "employ[ed] force, violence or deception, or threaten[ed] to employ force or violence upon the witness or victim[,]" § 4952(b)(1)(i), and Gray's jury was instructed accordingly. SCR at 978-79. The trial court explained to it that if it found Gray guilty on any of the counts of § 4953 Retaliation, it had to answer a special interrogatory and set forth how the retaliation was accomplished. SCR at 978. During its deliberations, the jury asked a question regarding the special interrogatory. In its response, the trial court once against instructed the jury on the offense of § 4953 Retaliation, giving the same instruction it had previously given in all relevant respects. SCR at 1001-02. When the jury subsequently answered the special interrogatory for each count of § 4953 Retaliation, it wrote that Gray was "guilty by threatening." SCR at 131-33. Therefore, those counts were graded as felonies of the third degree.

The obvious and significant problem with the instruction is that it did not define "harm" in accordance with *Ostrosky*. The court should have explained to the jury that, with respect to each count, it had to find that the victim suffered a harm beyond the normal feelings of concern and intimidation that would result from the receipt of the threatening letter (the "unlawful act") itself. The effect of the court's failure to define "harm" was compounded when it grouped the "harm" and "unlawful act" elements together and instructed the jury that the Commonwealth had to prove *only two elements* in order for it to convict Gray on any count of § 4953 Retaliation: (1) that he harmed the victim by an unlawful act; and (2) that he did so in retaliation. That is not a correct statement of the elements of the crime of § 4953 Retaliation under the circumstances. The jury had to find *three elements* to convict Gray of the offense: (1) that he harmed the victim, as defined by *Ostrosky*; (2) by an unlawful act; and (3) that he did so in retaliation.

After the trial court gave the instructions, it asked Gray's counsel whether he had "any objections or additions?" SCR at 997. Trial counsel replied that he had none. *Id.* The prosecutor objected on the basis that the Court did not instruct on § 4953's second and third scenarios. The trial court advised counsel that it only instructed on the statute's first scenario because it had determined that the Commonwealth had not introduced sufficient evidence to instruct the jury on the other two scenarios. SCR at 998-99.

The jury found Gray guilty of three counts of § 4953 Retaliation. Count 5 was for the first letter Gray sent to Irene, Count 6 was for the second letter he sent to her, and Count 7 was for the single letter he sent to Merle.

### (c)   Gray's direct appeal

In his direct appeal to the Superior Court, Gray argued that his convictions for § 4953 Retaliation must be overturned because the Commonwealth failed to produce sufficient evidence

from which the jury could have concluded that either of the Rices suffered the requisite "harm" from the receipt of the threatening letters. Significantly, in its decision in *Gray I*, the Superior Court agreed with Gray that the Commonwealth failed to introduce sufficient evidence that either Irene or Merle suffered "harm" as defined by *Ostrosky*. ECF No. 17-1 at 88-90. The Superior Court denied his claim, however, because it determined that there was sufficient evidence to support his convictions under the "course of conduct" provision (the second scenario) of § 4953. *Id.* It did not reconcile its holding with the fact that the trial court had refused to instruct the jury on that scenario. Under the instruction the trial court gave, the only way the jury could convict Gray on any count of § 4953 Retaliation was if it found that the "harms another by any unlawful act" provision was proven by the Commonwealth beyond a reasonable doubt. That was the very provision the Superior Court recognized in *Gray I* was not supported by sufficient evidence.[12]

### (d) Gray's PCRA proceeding

In his amended PCRA petition, Gray raised the claim that he now brings before this Court. He argued that his trial counsel was ineffective for failing to object to the instruction given by the trial court on the offense of § 4953 Retaliation, which he contended violated his due process rights because it relieved the Commonwealth of its burden of proving every element of the crime beyond a reasonable doubt. Specifically, Gray contended that his counsel should have objected to the instruction and suggested one that made clear to the jury that, in order to convicted him on each count of § 4953 Retaliation, it had to find that: (1) he sent the threatening

---

[12]     Additionally, the Superior Court did not address Gray's argument that, due to the manner in which the Commonwealth had charged him (one count of § 4953 Retaliation for each letter Gray sent to the Rices), there was not sufficient evidence to convict him under either the "course of conduct" or "repeatedly commits act" provisions (scenarios two and three) of the statute. The trial court had accepted that argument and that is why it had instructed the jury in the manner that it did.

17

letter (committed the unlawful act); (2) in retaliation; and (3) that the victim was "harmed," as defined by *Ostrosky*, as a result.

The PCRA court denied this claim and the Superior Court affirmed in *Gray II*. ECF No. 17-1 at 294-306.

### (2) Analysis

In evaluating this claim, and all the claims it had before it in *Gray II*, the Superior Court recognized that the *Strickland* standard applied.[13] ECF No. 17-1 at 297. In its adjudication of this specific claim, it ruled in favor of Gray on *Strickland* first prong–the deficient performance prong. Specifically, it recognized that Gray's underlying challenge to the trial court's instruction was meritorious because the instruction "combin[ed] the harm and illegal act" elements of the first scenario of § 4953 "into a single element." ECF No. 17-1 at 299. The Superior Court denied this claim because it concluded that Gray did not demonstrate that he was prejudiced by counsel's deficient performance. *Id.* at 299-301.

In deciding that Gray did not establish that he was prejudiced by counsel's error, the Superior Court relied upon its decision in *Commonwealth v. Sandusky*, 77 A.3d 663 (Pa. Super. Ct. 2013). ECF No. 17-1 at 299-301. The claim at issue in *Sandusky*, however, was not an ineffective assistance of counsel claim, nor did the defendant in that case argue, as does Gray, that the instruction given violated his due process rights. Rather, in *Sandusky*, the defendant challenged the trial court's instruction on state-law grounds, arguing that he was entitled to the

---

[13]     Pennsylvania courts typically articulate *Strickland's* standard in three parts, as the Superior Court did in *Gray II,* ECF No. 17-1 at 297, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See, e.g., Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012); *Commonwealth v. Kimball*, 724 A.2d 326, 330-33 (Pa. 1999).

"prompt complaint" instruction.[14] 77 A.3d at 666. The court in *Sandusky* agreed with the defendant that the trial court had erred when it failed to give the requested instruction. It found that state-law error to be harmless because the trial court had given the standard jury instruction on how to evaluate the credibility of a witness and it concluded that that instruction, combined with "[t]he vigorous cross-examination of the victims and arguments by defense counsel," "clearly defined the issues for the jury." 77 A.3d at 669.

Relying upon *Sandusky*, the Superior Court in *Gray II* asked, in evaluating whether Gray was prejudiced by his counsel's error, whether "the surrounding events at trial 'clearly defined the issues for the jury[,]'" notwithstanding the fact that the trial court's instruction did not. ECF No. 17-1 at 300. It answered that question in the affirmative, reasoning that Gray's "trial counsel's repeated emphasis of the harm requirement during cross-examination and in closing arguments" "sufficiently alerted the jury to the harm element of the offense[.]" ECF No. 17-1 at 300-01. For that reason, the Superior Court determined that Gray "failed to meet his burden of showing that any additional instruction from the trial court would have had any effect on the jury's verdict." ECF No. 17-1 at 301.

An argument can be made that the Superior Court, by relying so heavily on *Sandusky's* harmless-error review, did not apply the proper prejudice evaluation commanded by *Strickland*, which asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Stated another

---

[14]     *Sandusky* was the direct appeal of Gerald A. Sandusky, who was convicted of 45 counts relating to the sexual abuse of young boys. He "argue[d] that the trial court erred in refusing to give the jury the prompt complaint instruction found at Section 4.13A of the Pennsylvania Suggested Standard Criminal Jury Instructions." *Sandusky*, 77 A.3d at 666. "The premise for the prompt complaint instruction is that a victim of sexual assault would reveal at the first available opportunity that an assault occurred[,]" and it "permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity." *Id.* at 667. As Gray's points out in his brief, "Sandusky challenged a 'requested instruction,' and not an instruction regarding an element of the crime to which he was defending against." ECF No. 8 at 21.

19

way, although the Superior Court correctly identified *Strickland* as controlling at the beginning

of its decision, it may be that it failed to apply its prejudice standard when it actually adjudicated

this claim. If this Court were to conclude that the Superior Court failed to apply *Strickland's*

prejudice standard, the Superior Court's adjudication would be "contrary to" *Strickland* and this

Court would then proceed to review the merits of the claim *de novo*. Under a *de novo* standard of

review, the Court has no problem concluding that Gray has established that he was prejudiced by

his counsel's failure to object to the erroneous instruction and propose one that cured its

deficiencies.

The Court is mindful, however, that the Supreme Court has cautioned that federal courts,

when applying § 2254(d)(1)'s standard of review, should not be too quick to assume that the state

court applied the wrong law, even if the state court was imprecise in language it used in

evaluating a claim. *Woodford v. Visciotti*, 537 U.S. 19, 23-24 (2002) (*per curiam*) (finding the

court of appeals's "readiness to attribute error [to the state court] is inconsistent with the

presumption that state courts know and follow the law," and is "also incompatible with

§ 2254(d)'s 'highly deferential standard for evaluating state-court rulings,' which demands that

state court decisions be given the benefit of the doubt.") This is particularly so when a

commonly-applied and well-known inquiry such as the *Strickland* prejudice prong is at issue. *Id.*;

*cf. Titlow*, 571 U.S. at 19 (observing how common ineffective-assistance-of-counsel claims

under *Strickland* are and that it is "a claim state courts have now adjudicated in countless

criminal cases for nearly 30 years[.]") Moreover, the Supreme Court also has explained that a

"run-of-the-mill" state-court decision applying the correct legal rule from Supreme Court

decisions to the facts of a particular case does not fit within § 2254(d)(1)'s "contrary to" clause

and should be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406.

For these reasons, the Court will proceed under the assumption that the Superior Court's adjudication of this claim survives review under § 2254(d)(1)'s "contrary to" clause and that the proper way to evaluate it is under the "unreasonable application" clause. To satisfy his burden under the "unreasonable application" clause, Gray must do more than convince this Court that the Superior Court's decision was incorrect. *See, e.g.*, *Dennis*, 834 F.3d at 281. He must show that its decision "was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by court of appeals). As explained above, this means that Gray must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Although Gray's burden under § 2254(d)(1)'s "unreasonable application" clause is very difficult to overcome, he has satisfied it under the circumstances. The Superior Court held that Gray was not prejudiced because, through his cross-examination of the Rices and in his closing arguments, counsel "clearly defined the issues for the jury." ECF No. 17-1 at 300. For the following reasons, that adjudication was not just wrong, it was objectively unreasonable.

First, it is the court, not the parties, that instructs the jury as to the law that it must apply, and the trial court repeatedly made this point to Gray's jury. SCR at 572 ("You must follow my rulings and instructions on matters of law[.]... You will apply the rules of law which I give you to the facts as you find them[.]"); SCR at 957-58 ("[Y]ou are not required to accept the arguments of either lawyer. It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions I am now giving you."); SCR at 987 ("you must accept and follow my rulings and instructions on matters of the law.") The mere fact that counsel argued to the jury that the Rices were not harmed by Gray could not

21

alleviate the defect of the trial court's instruction, which did not instruct that "harm" was a separate element that the Commonwealth was required to prove beyond a reasonable doubt or define that element in accordance with *Ostrosky*.

Second, Gray's trial counsel and the prosecutor discussed in their closing arguments those scenarios that criminalized conduct under § 4953 that did not apply because the trial court refused to instruct the jury on them. Therefore, trial counsel's closing argument (as well as the prosecutor's) would have only confused the jury on the elements it had to find in order to convict Gray of § 4953 Retaliation.

Third, and significantly, there can be no dispute that the evidence was insufficient to establish that either of the Rices suffered the requisite "harm" necessary for the jury to convict Gray of § 4953 Retaliation under that statute's first scenario. *The Superior Court recognized that fact in Gray I.* The following conclusion is, therefore, unavoidable: but for counsel's error in failing to ensure that the jury was instructed that it had to find that the Commonwealth proved the element of "harm" as defined by *Ostrosky*, there is a reasonable probability that it would have acquitted Gray of the three counts of § 4953 Retaliation it had before it.

For all of these reasons, the Court concludes that the Superior Court's determination that Gray was not prejudiced by his trial counsel's deficient performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Gray thus has demonstrated that the Superior Court's decision was an "unreasonable application of" *Strickland*, and he also has demonstrated that his Sixth Amendment right to effective assistance of counsel was violated. He is entitled to a writ of habeas corpus on this claim and the Court will issue a

conditional one that directs that the Commonwealth retry him or, in the alternative, have the

Court of Common Pleas vacate his convictions on Counts 5, 6, and 7 and resentence him.

## B. Counsel's Failure to Object to the § 4953.1 Instruction

In his next claim, Gray contends that his counsel provided him with ineffective assistance

for failing to object to the trial court's instruction on the offense of § 4953.1 Retaliation, which

he contends deprived him of his due process right to have the Commonwealth prove every

element of the offense beyond a reasonable doubt.

### (1) Background

#### (a) The offense of § 4953.1 Retaliation

The Pennsylvania Crimes Codes defines § 4953.1 Retaliation as follows:

> A person commits an offense if he [1] harms *or attempts to harm* another or the
> tangible property of another [2] by any unlawful act [3] in retaliation for anything
> lawfully done in the official capacity of a prosecutor or judicial official.

18 PA. CONS. STAT. § 4953.1(a) (bracketed text and emphasis added). The offense of § 4953.1

Retaliation is a felony of the second degree if the jury finds the defendant engaged in the conduct

enumerated in subparagraph (b) of the statute, including "employs force, violence or deception or

attempts or threatens to employ force, violence or deception[.]" *Id.* §4953.1(b)(1).

#### (b) Gray's trial

At Gray's trial, the court gave the following instruction regarding the offense of § 4953.1

Retaliation:

> To find the Defendant guilty of this offense, you must find the following elements
> have been proven beyond a reasonable doubt.
>
> First, that the Defendant harmed or attempted to harm another person or the
> tangible property of [the victim].
>
> Second, that the Defendant did so by an unlawful act. Threatening someone, the
> crime of murder, can be an unlawful act. You will have the letters. You can
> review as to whether there was an unlawful act.

23

> Third, the Defendant did so to retaliate against [the victim], for something he or she did lawfully in his or her official capacity as a judge or prosecutor.

SCR at 975-76. Because the counts of § 4953.1 Retaliation were graded as a felony of the second degree, the jury was also advised that it had to find the following fourth element, in accordance with § 4953.1(b):

> Fourth, that the Defendant attempted or threatened to use force, violence or deception upon [the victim] or upon another person knowingly and intentionally to retaliate against [the victim] for something he or she did lawfully in his or her official capacity as a judge or as a prosecutor.

SCR at 975-77.

### (c)    Gray's direct appeal

In his direct appeal, Gray argued that his four convictions of § 4953.1 Retaliation should be overturned because the Commonwealth introduced insufficient evidence that any of the judicial or prosecutorial victims suffered harm as defined by *Ostrosky*. ECF 17-1 at 26-27. The Superior Court accepted Gray's arguments that *Ostrosky's* holding extended to the offense of § 4953.1 Retaliation and that none of the victims at issue suffered "harm" as defined by that case. The Superior Court denied his claim because it found that there was sufficient evidence that he *attempted to cause each victim the requisite harm*, explaining:

> Gray overlooks that [§ 4953.1 Retaliation], unlike the crime of retaliation against a witness [§ 4953], does not indicate that "harm" must exist. Rather, it is sufficient if the defendant "attempted" to cause harm. The vile and repugnant nature of the communications received by [the judicial and prosecutorial victims] cannot be overstated. They bear no resemblance to the assault threats examined in *Ostrosky*. The actions that Gray said that he would commit with respect to [the Assistant District Attorney of Hoden's 2007 criminal cases and one of the judicial victims] are so vile that we could not reproduce them. Indeed, [the Assistant District Attorney] was pregnant when the letters were sent to her office, and her colleagues did not allow her to view them for fear she would suffer a miscarriage.
> Additionally, even though Gray and Hoden were incapable of performing the heinous acts for two years, they also informed victims that there were people outside prison who were available to perform the acts. Moreover, there was an insidious, menacing air of immediacy in the communications. Gray repeatedly used the terms, "tick, tock, time is running out." The victims were told to be on

alert continually for the possibility of being shot in the head, burnt, and tortured. In some cases, family members were threatened. Finally, Hoden and Gray sent their letters contemporaneously so that each victim received them at the same time in order to heighten the physical fear and mental anxiety a lone letter might cause. *Given all these circumstances, the record sustains a finding beyond a reasonable doubt that Gray and Hoden attempted to objectively harm their victims beyond causing concern or intimidation that would naturally flow from receipt of menacing letters, in and of itself. Cf. Commonwealth v. Helsel*, 53 A.3d 906, 918 (Pa. Super. 2012) (quoting 18 Pa.C.S.A. § 901(a)) ("A person commits an attempt when, with attempt to commit a specific crime, he does any act which constitutes a specific crime.").

*Thus, while Gray and Hoden were unsuccessful in causing the prosecutors and judicial officials objective harm, Gray and Hoden's language and synchronicity in mailing the letters unequivocally demonstrated that they had the specific intent to cause objective harm to each victim beyond concern or intimidation. They therefore attempted to cause such harm.* Hence, we reject this challenge to the sufficiency of the evidence supporting the offenses of retaliation against a prosecutor or judicial officer.

ECF No. 17-1 at 91-92 (emphasis added).

In the petition for allowance of appeal that he filed with the Supreme Court of

Pennsylvania, Gray claimed that the Superior Court's determination that there was sufficient

evidence that Gray attempted to cause each victim a harm that satisfied *Ostrosky's* definition was

erroneous. ECF No. 17-1 at 115 ("if the court accepts the definition of 'harm' as outlined in

*Ostrosky*, it cannot be established that there was an attempt to cause harm.") The Supreme Court

of Pennsylvania declined to review that claim. ECF No. 17-1 at 165.

### (d)     Gray's PCRA proceeding

In his PCRA proceeding, Gray argued, as he does here, that his trial counsel should have

objected to the § 4953.1 Retaliation instruction and requested that "harm" be defined in

accordance with *Ostrosky*. Because that term was not defined, Gray contended, the jury was not

informed that it had to find that he attempted to cause a "specific and identifiable harm aside

25

from the threatening language itself."[15] ECF No. 17-1 at 249. If his trial counsel had objected to

the instruction and proposed one that cured its defect, Gray argued, there is a reasonable

probability that the jury would have acquitted him on the § 4953.1 Retaliation counts because

there was "no evidence of...attempted harm with respect to the judges and prosecutors as

recipients of threatening letters." ECF No. 17-1 at 250.

The PCRA court denied this claim, and the Superior Court affirmed, adopted the PCRA

court's reasoning in full, and determined that Gray was not prejudiced by his counsel's alleged

deficient performance. ECF No. 17-1 at 301-03.

### (2) Analysis

The Superior Court concluded that Gray was not prejudiced by his trial counsel's failure

to object to the § 4953.1 Retaliation instruction because the evidence was "overwhelming" that

his "conscious objective was to cause his victims to live in persistent fear for their own lives or

their and their families' lives." ECF No. 17-1 at 303. It pointed out that each of Gray's letters

"were graphic and explicit; they depicted brutal methods of physical and sexual assault that even

[Gray]...described as 'very shocking' and 'malicious.'" *Id.* Because it concluded that "there was

no question that" Gray "was *attempting to cause his victims extreme psychological and*

*emotional harm*," the Superior Court held that Gray "failed to establish he was prejudiced by the

lack of a more specific harm instruction." *Id.* (emphasis added).

---

[15]      Gray also argued in his PCRA proceeding, and again to this Court, that the trial court's instruction
permitted the jury to convict him of § 4953.1 Retaliation if it found that he "attempted *to* threaten." ECF No. 17-1 at
246; *id.* at 247 ("The instruction given actually permits the jury to convict Gray for 'attempting *to* threaten.'")
(emphasis added). In actuality, the trial court expressly instructed the jury that in order to find Gray guilty of
§4953.1 Retaliation, it had to find that Gray "harmed *or* attempted to harm [the victim]" and that he "did so by an
unlawful act." SCR at 976. It did also instruct that the jury had to find that Gray "attempted *or* threatened to use
force, violence or deception upon [the victim]," *id.* (emphasis added), but this portion of the instruction was
pertaining to the grading of the offense and was in accordance with § 4953.1(b). In any event, the Superior Court
denied Gray's claim that his trial counsel was ineffective for failing to object to, and cure any deficiencies in, the
§ 4953.1 Retaliation instruction because it determined that, even if the instruction was erroneous, Gray did not
establish that he was prejudiced. ECF No. 17-1 at 301-03.

26

The Superior Court's adjudication withstands review under § 2254(d)(1)'s "contrary to" clause. Unlike his previous claim, there is no reason for this Court to question whether the Superior Court actually applied *Strickland's* prejudice standard when it evaluated this claim. Therefore, to prevail on this claim, Gray must show that the Superior Court's decision that he was not prejudiced by his counsel's failure to object to the § 4953.1 Retaliation instruction was an "unreasonable application of" *Strickland.*

Gray has not met his burden. In both *Gray I* and *Gray II*, the Superior Court concluded that the threats Gray made to the judicial and prosecutorial victims were so horrific, and communicated with the purpose of instilling constant fear in the victim, that his conduct fell within the definition of the "attempts to harm" element of the offense of § 4953.1 Retaliation. This Court must accept the Superior Court's decision in this regard, as it is based upon its interpretation of state law and, as such, is not subject to review by this Court. *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). The Superior Court in *Gray II* determined that Gray was not prejudiced by his counsel's alleged deficient performance in failing to cure any deficiency in the § 4953.1 Retaliation instruction because it was reasonably probable that the jury still would have convicted him on each count of that offense due to the overwhelming evidence that he *attempted to harm* the victims. Its adjudication was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, it was not "an unreasonable application of" *Strickland's* prejudice prong.

27

In actuality, Gray's issue is with the Superior Court's application of *Ostrosky* to the facts of his case, but it is not for this Court to decide whether the Superior Court's adjudication was in accordance with *Ostrosky*. This Court's task is determining only whether the Superior Court's decision was "an unreasonable application of" United States Supreme Court precedent (specifically, of *Strickland's* prejudice prong). It is worth noting again, however, that in the petition for allowance of appeal that he filed in his direct appeal, Gray argued that the Superior Court misapplied *Ostrosky*, ECF No. 17-1 at 115, and the Supreme Court of Pennsylvania declined to review that claim. ECF No. 17-1 at 165.

Gray also argues that the Superior Court's decision in *Gray II* was inconsistent with its earlier decision in *Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super. Ct. 2016). Even if Gray's argument had merit (and this Court is not concluding that it does) he cannot receive federal habeas relief on the basis that the Superior Court's adjudication was inconsistent with another state-court decision.[16] Rather, he must show that its adjudication was "an unreasonable application of" *Strickland's* prejudice prong, and he did not meet his burden here. Moreover, as the Respondents argue in their answer, *Walls* merely applied the analysis of § 4953 set forth in

---

[16]     In *Walls*, the Superior Court held, *inter alia*, that *Ostrosky's* definition of harm applied to the § 4953.1 Retaliation statute. That holding is consistent with the Superior Court's decisions in *Gray I*, which did not dispute that *Ostrosky* applied to § 4953.1, but held that there was sufficient evidence that Gray attempted to "harm," as that term is defined by *Ostrosky*. In *Walls*, the defendant encountered an assistant district attorney at a store, accused her of causing his grandmother's death, and told her "that she would be next." 144 A.3d at 931. The defendant "never made physical contact with [the victim] and she sustained no injuries resulting from her interaction with" the him. *Id.* The Commonwealth argued that "placing [the victim] in fear and causing her to seriously reassess her career as a prosecutor" qualified as "harm." *Id.* at 933. The Superior Court disagreed, explaining that "[t]he statute specifically requires some objective harm separate and apart from intimidation and psychological harm that resulted from any unlawful act. Thus, for the same reasons expressed by our Supreme Court in *Ostrosky*, we hold that the harm required under section 4953.1 is not satisfied by the mere showing of mental or psychological harm." *Id.* at 935-36. It also rejected the Commonwealth's argument "that even under our interpretation of the harm requirement, [the defendant] attempted to harm [the victim]" because "he took a substantial step towards killing" her. *Id.* at 936. The Superior Court found that "[t]here is no support in the record for this assertion. [The defendant] never took a substantial step towards harming [the victim]. He made the relevant threat as he was backing away from [her]. He did not try to approach or harm her after he made the threat.... Thus, we conclude that [the defendant] did not take a substantial step towards harming [the victim]." *Id.*

28

*Ostrosky* to §4953.1. In *Gray I*, the Superior Court distinguished Gray's case from *Ostrosky*, finding that Gray's conduct was so much more horrific that it demonstrated a specific intent to cause objective harm to each victim beyond concern or intimidation, thus bringing Gray's conduct within the ambit of § 4953.1. ECF No. 17-1 at 91-92.

Based upon all of the foregoing, Gray is not entitled to habeas relief on this claim. Because jurists of reason would not find it debatable that this claims lack merit, the Court will not grant Gray a certificate of appealability on it.[17]

### C.  Failure to Object to the Jury's Use Of the Letters During Deliberations

In his final guilt-phase claim, Gray contends that his counsel provided him with ineffective assistance for failing to object to the trial court's decision to allow the jury to possess the threatening letters during its deliberations.

#### (1)  Background

At Gray's trial, all of the threatening letters were read to the jury. One of Gray's defenses was that he did not write them, and he testified that his real signature, as evidence in the documents admitted as Commonwealth exhibits 23 and 25, did not resemble the signatures appearing on the letters. Hoden attempted to bolster this portion of Gray's defense by stating when he testified that he (Hoden) had written all the letters and that he had forged Gray's signature. In his closing argument, the prosecutor asked the jury to compare the handwriting on the letters and the envelopes in which they were sent against the handwriting samples that were unquestionably Gray's. SCR at 949-50.

---

[17]     AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 ("A certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Before the jury retired to deliberate, the trial court explained that it would permit the letters to go out with it. Gray's trial counsel did not object. In his amended petition for PCRA relief, Gray argued that his counsel was ineffective for failing to object on the grounds that the trial court's decision violated Rule 646(C) of the Pennsylvania Rules of Criminal Procedure. ECF No. 17-1 at 170. That Rules provides, in relevant part, that "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C)." Pa.R.Crim.P. 646(A). Paragraph C provides, in relevant part, that "[d]uring deliberations, the jury shall not be permitted to have: (1) a transcript of any trial testimony; [or] (2) a copy of any written or otherwise recorded confession by the defendant[.]" Pa.R.Crim.P. 646(C). Gray argued that the letters should not have been allowed to go out with the jury since they "effectively provided a transcript of trial testimony[,]" and also because they could be deemed to be a confession by him. ECF No. 17-1 at 170. He also argued that the trial court's decision violated his due process rights, arguing that the letters were so inflammatory that they would have biased the jurors, rendering his trial fundamentally unfair. *Id.*

The PCRA court denied relief on this claim because it found no merit in either of the grounds that Gray contended his counsel should have raised in objection to the trial court's decision. It first explained:

> As a general rule, evidence, even when relevant, should not be admitted if its probative value is outweighed by the danger of unfair prejudice, which occurs where the nature of the evidence is such that it has a tendency to inflame the jury and cause it to render a verdict based on something other than the relevant legal propositions. *E.g.*, *Commonwealth v. Antidormi*, 84 A.3d 736, 750 (Pa. Super. 2014). Rule 646 merely augments that long-standing principle, its purpose being to avoid having juries overemphasize the weight and credibility of evidence in their possession while minimizing the value of other evidence simply because its is not in front of them. [*Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa. Super. 2012)]. Consistent with the admissibility analysis, therefore, the question when deciding whether a jurist abused his discretion in sending certain evidence to the

jury room is whether the defendant was prejudiced because of it. *Id.* In this case, the answer is a resounding "no."

ECF No. 17-1 at 207-08. The PCRA court then concluded that the letters did not qualify as items prohibit by Rule 646(C)(1) or (2) because they were not a "transcript of any trial testimony[,]" or confessions. ECF No. 17-1 at 208 (the letters "established the *corpus* of the crimes charged, not admissions that Gray wrote any of them.") The PCRA court also rejected Gray's argument that the trial court's decision rendered his trial fundamentally unfair, explaining:

> Insofar as Gray insisted that he had neither authored nor signed the letters bearing his name, moreover, it was essential that the jury be able to compare them with the undisputed samples of his signature. Accordingly, their probative value far outweighed any potential for prejudice. In addition, Commonwealth exhibits 23 and 25 and Defendant's exhibit 2–a third sample of Gray's signature–were in the jury's possession and served as continual reminders of Gray's testimony denying the allegations against him. Consequently, the totality of the evidence in the jury's possession adequately represented both parties' positions to the effect that the letters were not prejudicial to the defendant.

*Id.* "Insofar as the underlying issue here is without merit," the PCRA court concluded, Gray's trial counsel "cannot be deemed ineffective for failing to object when the Court indicated that it would send the letters out with the jury." *Id.*

In *Gray II*, the Superior Court adopted the reasoning of the PCRA court and held that "it was proper" for the trial court "to provide the jury with the letters so that the jury might compare them to a known sample of [Gray's] handwriting where [his] defense at trial was that the letters had been forged and were not in fact his handwriting." ECF No. 17-1 at 305. The Superior Court concluded that "trial counsel was not ineffective for failing to raise a meritless objection." *Id.*

### (2)    Analysis

There is no basis for this Court to grant Gray federal habeas relief on this claim. This Court is bound by the Superior Court's state-law determination that the trial court's decision to permit the jury to possess the letters during its deliberation did not run afoul of Rule 646(C). *See,*

31

*e.g.*, *Priester*, 382 F.3d at 402. As for the Superior Court's rejection of his argument that the trial court's decision violated his right to due process, this Court can review that portion of its adjudication, but it must do so under § 2254(d)(1), and Gray has not demonstrated that the Superior Court's determination was "contrary to" or an "unreasonable application of" Supreme Court due process precedent.

And, finally, because Gray's ultimate burden is to prove that his Sixth Amendment right was violated by his trial counsel's failure to object to the trial court's decision, he must demonstrate that the Superior Court's rejection of this ineffective-assistance claim was either "contrary to" or an "unreasonable application of" *Strickland*. He has not demonstrated that it was either and, therefore, he is not entitled to federal habeas relief on this claim. Because jurists of reason would not find it debatable that this claim lacks merit, he is not entitled to a certificate of appealability on it.

## IV.     Conclusion

Gray has established that his trial counsel rendered ineffective assistance for failing to object to the trial court's instruction on the offense of § 4953 Retaliation and that the Superior Court's adjudication of this claims was an "unreasonable application of" *Strickland*. Therefore, the Court will issue a conditional writ of habeas corpus. Within the time-frame set forth in this Court's conditional writ order, the Commonwealth must retry Gray or, in the alternative, it may opt to have the Court of Common Pleas vacate Gray's convictions on the offense of § 4953 Retaliation (Counts 5 through 7) and resentence him.

An appropriate order follows.

RICHARD A. LANZILLO
United States Magistrate Judge

Date: February **21**, 2019

32

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDDIE RAY GRAY, )
            Petitioner, )    Civil Action No. 17-71 Erie
)
      v. )
)    Magistrate Judge Richard A. Lanzillo
ERIC TICE, et al., )
           Respondents. )

## ORDER

AND NOW, this 21 day of February, 2019, in accordance with the Opinion issued on this

date, IT IS ORDERED that:

(1)    Eddie Ray Gray's request for habeas relief on his claim that his trial
counsel was ineffective for failing to object to the § 4953 Retaliation instruction is
**GRANTED**;

(2)    The execution of the writ of habeas corpus is **STAYED** for 180 days from
the date of this Order, during which time the Commonwealth of Pennsylvania
may either: (a) retry him; or (b) have the Court of Common Pleas of Warren
County vacate his three convictions on § 4953 Retaliation at CP-62-CR-264-2012
and impose a new sentence on his remaining convictions;

(3)    After 180 days, should the Commonwealth of Pennsylvania not carry out
either option set forth in paragraph 2, the writ will issue and the superintendent
respondent will be ordered to release Gray from the judgment of sentence
imposed by the Court of Common Pleas of Warren County at CP-62-CR-264-
2012;

(4)    Gray's request for habeas relief on his other guilt-phase claims is
**DENIED** and a certificate of appealability is **DENIED** with respect to each of
those claims.

RICHARD A. LANZILLO
United States Magistrate Judge

Service via CM/ECF to Respondents' counsel of record and by first-class mail to the following:

Eddie Ray Gray
JL6615
SCI Mahanoy
301 Morea Road
Frackville, PA 17932

Robert Greene, Esq.
District Attorney of Warren County
Warren County Courthouse
204 4th Avenue
Warren, PA 16365

Office of the Court Administrator
Warren County Courthouse
204 4th Avenue
Warren, PA 16365